POINDEXTER *v.* RAWLINGS.

(*Knoxville.* November 21, 1900.)

1. VENDOR AND VENDEE. *Vendor's lien saved from bar of statute by renewal or new promise, when.*

    The renewal of a purchase-money note given for a conveyance of lands, or a new promise before expiry of limitations, will preserve the vendor's lien, and prevent operation of the statute of limitations against it as to the vendee in possession, from the maturity of the renewal or date of the new promise. (*Post, pp. 101, 102.*)

    Cases cited: Sheratz *v.* Nicodemus, 7 Yer., 8; Thompson *v.* Thompson, 3 Lea, 126; Hughes *v.* Brown, 88 Tenn., 594; Fisher *v.* Fisher, 9 Bax., 71.

2. ESTOPPEL. *By surrender of joint deed to husband and wife and taking one to wife.*

    Where a husband, joint grantee with his wife, returned a deed to the grantor, and requested the execution of a new one to the wife, which was done, and the wife took possession and claimed title thereunder, though such transaction passed no additional interest to the wife, it precluded the husband from asserting his joint interest as against her, and hence he had no interest in the land which the grantor could subject to his vendor's lien. (*Post, pp. 102–104.*)

    Case cited: Howell *v.* Hoffman, 3 Head, 563.

3. SAME. *Same.*

    Such transaction also estopped the wife to assert any ownership under the original deed. (*Post, p. 104.*)

4. SAME. *Same.*

    Though the second deed, for lack of title in the vendor, passed no title, it worked an estoppel against all the parties to the transaction. (*Post, pp. 102–104.*)

22 p—7

Poindexter *v.* Rawlings.

5. DEED. *Color of title.*

As it purported to convey the fee, the second deed was a good color of title on which to base adverse possession. (*Post, p. 104.*)

6. VENDOR'S LIEN. *Possession held in subordination to.*

As the wife paid nothing for the land, and knew that her husband owed for it, the vendor's lien for the unpaid price followed the land into her hands, and her possession was in subordination thereto until the maturity of the purchase-money notes, at which time limitations began to run against it, as it would have done against the real vendee. (*Post, pp. 103–105.*)

7. SAME. *Not saved from bar of wife's possession by husband's renewals and new promises.*

Renewals and new promises by the husband as to the notes, to which she was not a party, would not prevent limitations running against the vendor's lien on the land in her possession. (*Post, pp. 105, 106.*)

8. SAME. *Same.*

That the husband was the agent of the wife in procuring the second deed, or that she accepted it knowing the land was subject to the vendor's lien, did not imply that she became bound to so hold it for all time, but the implication is that her holding was to be subordinate to the lien only until the purchase money notes matured and suit would lie to enforce the lien, which presumption is not overcome by the fact that her husband made renewals and new promises, they being without her knowledge. (*Post, pp. 106, 107.*)

9. SAME. *Statute of limitations begins to run against, when.*

Limitations barring a vendor's lien begin to run from the maturity of the purchase money obligations, and not from the conveyance. (*Post, pp. 107, 708.*)

---

FROM SEVIER.

---

Appeal from Chancery Court of Sevier County. JNO. P. SMITH, Ch.

HUFFMASTER & CHESNUTT for Poindexter.

J. R. PENLAND for Rawlings.

CALDWELL, J.    This is a bill to collect balance of purchase money for land, and to enforce the vendor's equity.

In 1883 the complainant, Martha A. Poindexter, sold and conveyed a tract of land in Sevier County to the defendants, A. P. Rawlings and his wife, Mary S. Rawlings, for the consideration of $2,500; one-half thereof being paid in cash, and the other half being covered by three notes of A. P. Rawlings, maturing in 1885, 1886, and 1887, respectively.    Upon the maturity and payment of the first note, in 1885, A. P. Rawlings returned the original deed to the vendor, and she, at his request, executed another deed in its stead, conveying the land to his wife, Mary S. Rawlings, alone.    This deed, like the former one, merely recited a consideration of $2,500 "in money and notes," and made no express reservation of a lien.    The second and third notes were renewed from time to time by A. P. Rawlings, and when this bill was filed in August, 1899, he still owed on them an aggregate of more than $1,100.

On the foregoing facts the complainant sought to collect the balance of purchase money due her by an enforcement of her vendor's equity in the land.

A. P. Rawlings pleaded the statute of limitations of six years in bar of a recovery on the older of the two renewals, and, with his wife, also pleaded the statute of seven years in bar of the vendor's equity in the land.

The Chancellor and the Court of Chancery Appeals successively overruled the former plea and sustained the latter one; and then pronounced a decree against A. P. Rawlings, personally, for the whole balance of unpaid purchase money, but refused a sale of the land, upon the ground that the vendor's equity therein was barred before the filing of the bill.

The complainant has appealed from so much of the decree of the latter tribunal as denied her a sale of the land for her debt; and A. P. Rawlings from that part overruling his plea of the statute of limitations as to the older renewal.

It appears from an inspection of the older of the two renewal notes that it was a few months more than six years past due when the bill was filed, and, consequently, that, in the absence of other proof, the complainant's action thereon was barred by the six years statute. But the Court of Chancery Appeals found, as a fact from other proof in the record, that A. P. Rawlings had within that period promised to pay that note. That finding is conclusive; and the new promise, being distinct and definite, arrested the running of the statute, saved the action from its bar, and

justified the recovery on that note. There is no question as to the correctness of the recovery on the other note.

What effect, if any, did the renewals and new promise have on the operation of the seven years statute against the vendor's equity in the land?

It has long been settled in this State that the vendor's equity will be barred by the vendee's continuous possession of the land under an absolute deed for a period of seven years after the maturity of the debt. *Sheratz* v. *Nicodemus,* 7 Yer., 8; *Thompson* v. *Thompson,* 3 Lea, 126; *Hughes* v. *Brown,* 88 Tenn., 594.

In the intermediate case of *Fisher* v. *Fisher,* 9 Bax., 71, it was said that the vendor's equity was extinguished by the bar of the debt in six years.

Whether the renewal of a purchase money note, or a new promise within six years afer maturity, will also prolong the life of the vendor's equity and put the statute in operation against it only from the maturity of the renewal, or the date of the new promise, has not been decided, except, possibly, by implication of an affirmative nature in the concluding portion of the opinion in the Thompson case just cited. We are fully persuaded, however, that it will produce that result as to the vendee in possession, and now so rule. The vendee's possession is presumably in subordination to the vendor's equity, whenever lia-

bility for unpaid purchase money is so acknowledged and extended, and, as a consequence, the period of limitation cannot rightfully be computed back of that time, because the statute never runs in favor of a subordinate holding. The continued acknowledgment of the debt by formal renewal or distinct and definite promise, is from its nature, unless qualified, likewise a continuing recognition of the vendor's equity. It is a matter of conscience and legal duty that the vendee pay for the land he buys; hence, so long as the possession is coupled with renewed confessions of liability for purchase money, his holding will be regarded as in harmony with the vendor's equity, and not in antagonism to it, unless he make some affirmative expression to the latter effect.

It follows, therefore, that the renewals and new promises by A. P. Rawlings, being made without qualification or reservation against the vendor's equity, had the effect not only of extending his legal responsibility for the notes, but also of prolonging the life of that equity, of arresting and postponing the operation of both statutes so far as he was concerned; and that the complainant's right to enforce her equity against any interest he might then have in the land was not barred, but available at the time she filed her bill.

His interest, under the deed of 1883, was that of tenant by the entirety with his wife, the conveyance being to them jointly, and the complain-

ant now has the right to subject that interest to sale for the payment of her debt, unless it should appear that it subsequently passed out of him, or was waived in such manner as to defeat her equity in it.

He has never in fact conveyed his interest to any one; nor was the return to the vendor of her deed to him and his wife efficacious in law to divest them of their title and revest it in the vendor. *Howell* v. *Hoffman,* 3 Head, 563.

The complainant therefore had no title to impart when she executed the deed to Mrs. Rawlings in 1885, and of course Mrs. Rawlings acquired no title as such thereby. Nevertheless the surrender of the first deed by A. P. Rawlings to the vendor, and her execution of the second one in its stead to his wife by his request, and her claim and possession thereunder, preclude him in equity from now claiming any interest in the land as against his wife, and the same facts likewise preclude the complainant from now asserting that A. P. Rawlings has any interest under the first deed to which her vendor's equity can attach. As against his wife he no longer has an interest in the land as vendee, and the complainant for that reason can have no relief against the land as his property.

How, then, if at all, did the renewals and new promises by A. P. Rawlings affect the vendor's equity in the land as the exclusive property of

his wife? The Court is relieved of the necessity of considering their influence upon the equity in her original interest as joint vendee with her husband under the first deed, for the facts that have just been held to exclude all idea of present ownership in him under that instrument are equally potent in disproving such ownership in her. For the purpose of this litigation at least, her present ownership must be regarded as having arisen under the second deed alone. Though that instrument, for lack of title in the vendor at that time, passed no title to Mrs. Rawlings, it nevertheless worked an estoppel on all the parties to the transaction; and as it purported to convey the fee, it was also good color of title upon which to base adverse possession. However, as she accepted that deed without paying for the land herself, and with ample knowledge that her husband then owed the two immature purchase money notes, the vendor's equity for those notes undoubtedly followed the land into her hands, and her possession in its inception was, as that of the real vendee, in subordination to that equity until the notes matured. This is true whether she be regarded as a subvendee with notice (*Sheratz* v. *Nicodemus,* 7 Yer., 8; 2 Story's Eq. Jur., Sec. 1217), or as a mere volunteer (*Robinson* v. *Owens,* 103 Tenn., 48), which she really was; and it is equally true that the seven years statute began its operation in her favor and against

the vendor's equity in the first instance, as it would have done as to the real vendee, not when she received her deed and took possession in 1885, but as to the equity for one note when it matured in 1886, and as to the equity for the other note when it matured in 1887. Therefore, the possession that Mrs. Rawlings acquired and held for herself alone under her deed, from the time of its execution in 1885 to the filing of the bill in 1899, thirteen years and twelve years respectively after the maturity of the original notes, was effective under the seven years statute, not only to extinguish all interest of her husband as joint vendee under the first deed, but also for the extinguishment of the vendor's equity that followed the land into her hands, unless her husband's renewals and new promises arrested the statute and kept the equity alive against her, as they would have done against him if he had owned the land when they were made.

Obviously the mere renewals and new promises, as such, and without more, were not productive of such result, she not being a party to them. She could not be deprived of the ordinary legal consequences of her possession by the independent and individual act of her husband, nor prejudiced in her separate rights without some act of her own. Participation on her part in the extension of the notes, or her assent to it, would doubtless have given the same extension to the vendor's

equity; but the burden of showing such participation or assent was upon the vendor. No such fact was shown. Indeed, the record fails to show that Mrs. Rawlings was in any way even cognizant that the renewals and new promises were made. It results that she is not affected by them, and that the period of limitation in her favor must be computed from the maturity of the original notes. When that is done, it appears that the statute had more than completed its full course against the separate equity of each of these notes at the time the bill was brought, and consequently that the complainant then had no right to have the land sold for the satisfaction of the unpaid purchase money.

It is contended in behalf of the complainant that A. P. Rawlings was the agent of his wife in surrendering the first deed and procuring the second one, and that statements then made by him to the effect that the land would thereafter remain bound for the unpaid purchase money as in the first instance, were binding upon her as his principal, and, hence, that she should not now be heard to deny the existence of the vendor's equity.

The most that can be made of the facts thus contended for, is that Mrs. Rawlings took the land in 1885 subject to the vendor's equity. The Court has no doubt, and has already ruled, that she did so take it. The contention does not em-

brace the further proposition that her husband, after that time, or when the renewals and new promises were made, undertook as her agent to extend the life of the vendor's equity; and if it did, there is no proof of the fact. That Mrs. Rawlings knowingly took the land at the outset subject to an equity in favor of the complainant for unpaid purchase money, does not imply that she thereby became bound to so hold it for all time. On the contrary, the implication is that her holding was to be subordinate to that equity only so long as the notes then outstanding remained immature, until suit might be brought to collect them and enforce the equity; and to rebut that implication it was incumbent on the complainant to show additionally some act or course of conduct on the part of Mrs. Rawlings sufficient to make an extension of the equity beyond its original scope of time. Renewals of the notes and new promises by her •husband without her knowledge, though he may have acted as her agent in the first instance, are not sufficient for that purpose.

Though it pronounced a correct decree upon the facts of the case, the Court of Chancery Appeals was in error when it said, in its opinion on the law, that the mere execution of a deed and delivery of possession thereunder establish an adversary relation between the parties as to unpaid purchase money, and that "from that day the

Poindexter *v.* Rawlings.

statute of limitations of seven years begins to run in favor of the vendee against the vendor." In reality, as has been seen, the possession of the vendee does not become adverse, and the statute does not begin to run against the vendor's equity, until the maturity of the purchase money debt, until the vendor has a matured right of action for his debt, and for the enforcement of his equity. It was so decided in the cases cited on that subject in a former part of this opinion.

Let the decree be affirmed.