GEORGE ALLIS *et al. v.* J. B. HUNT, *et al.*\*

MAY B. LOCKHART *v.* JOHN P. IBSON, *et al.*

MAY B. LOCKHART *v.* ROBERT PHIPPS.

(*Nashville.* December Term, 1926.)

Opinion filed, February 26, 1927.

1. **CHAMPERTY. Construction sections 3171, 3172, Shannon's Code. Code 1858, sections 1776, 1777. Conveyance. Adverse possessions.**
   When "A" having good title defining his boundaries to a larger tract of land, without an actual or occupancy possession thereon, "B" enters thereon under good color of title to a smaller tract lying within "A's" boundaries, and establishes an actual possession or occupancy within the boundaries of his smaller tract, that "B's" possession **to the extent of his boundaries** is of that exceptional constructive character which is effective to put in operation the running of our seven-year statute; and further, that the subsequent location by "A" of actual possessions on his larger tract, but **outside of the boundaries of "B",** the disputed area will not reconfer by construction· the possession of "A", within the boundaries of "B" nor suspend the running of the adverse possession statutes. And the conveyances by "A" are champertous not as to "B's" actual enclosure only, but as to the entire tract on which his actual possession was located. (Post, p. 157-162.)
   Citing: Stull v. Rich Patch Iron Co., 92 Va., 253; Hebard v. Scott, 95 Tenn., 467; Snapp v. Purcell, 2 Tenn., Chy. Appeals, 566; Green v. Cumberland Coal Co., 110 Tenn., 35. Fox v. Hinton, 4 Bibb 559.
   Citing and distinguishing: Hunnicutt v. Peyton, 102 U. S., 333, 26 L. Ed., 113; Iron Co. v. Railroad, 131 Tenn., 221; Jones v. Coal Creek Mining Co., 133 Tenn., 183; Creech v. Jones, 5 Sneed, 632; Norvell v. Gray, 1 Swan., 96, 107; White v. Lavender, 5 Sneed, 648; Berry v. Walden, 4 Hay., 174; Walker v. Fox, 85 Tenn., 134; Green v. Liter, 8 Cranch, 229; 3 L. Ed., 545, 2 Corpus Juris, 243, 244, 245.

2. SAME. Same. Same.

In cases of conflicting land titles the possessions must be located within the disputed area to be effective; also that in order that the possession of one claimant shall neutralize the possession of the other, both must be in actual possession of some part of the disputed land. (Post, p. 49.)

Citing: Mitchell v. Churchman's Lessees, 4 Hum., 218, 219; Wright v. Hurst, 122 Tenn., 656; Elliott v. Coal & Coke Co., 109 Tenn., 745; Waddle v. Stuart, 4 Sneed, 534; Kittel v. Steger, 121 Tenn., 400; Napier v. Simpson, 1 Ov., 448, Note 34 to section 4456, Shannon's Code; Mansfield v. Northcutt, 112 Tenn. 536.

*Headnotes 1. Adverse Possession, 2 C. J., section 527; 2. Champerty and Maintenance, 11 C. J., section 54.

## FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County. —HON. W. B. GARVIN, Chancellor.

JEFF D. FULTS, for plaintiff in error.

F. T. FANCHER, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

In a memorandum opinion, filed in these consolidated causes, the numerous questions presented by this large record have been dealt with in detail. This opinion, for publication, is confined to a discussion of the question of law, assumed to be of general interest, arising out of the insistence that certain conveyances from the Church heirs to the complainants, suing in ejectment, were executed and delivered while the defendant Ibson was in adverse possession of a portion of the lands sued for.

While several large tracts of land are involved generally in the litigation, it is with respect to what is known

in the record as the W. T. Parker tract, of some 600 acres, lying in the northeast corner, and wholly within the boundaries of the Church grant of some 5,000 acres, that the issue of champerty is pertinent.

The Church heirs had the record and better title to the entire grant, but previous to the making of the conveyances to the complainants, defendant Ibson, under a color of title to this northeast 600 acre tract, entered and established thereon an actual possession, a residence and small enclosure, claiming to the extent of his color of title boundaries. Subsequently, and within three years of Ibson's entry, the Church heirs entered upon the 5,000 acre grant and placed thereon one or more actual possessions, none of which were, however, located within the 600 acre Ibson tract. In this situation the conveyances were made to complainants. To what extent were these conveyances champertous?

Under our statutes (Shannon's Code, Sections 3171, 3172), any sale or grant is "utterly void, where the seller has not himself, or by his agent or tenant, or his ancestor, been in actual possession of the lands or tenements, or of the reversion or remainder, or taken the rents or profits for one whole year next before the sale;" and any suit brought for the recovery of the lands so granted "shall be forthwith dismissed." (*Idem,* section 3173).

The Chancellor held that upon entry of the true owners, by placing possessions within the Church grant, although outside of the Ibson boundaries, Ibson's adverse possession was reduced to his actual enclosure, and that the conveyances were champertous to this extent only,—that the constructive possession of Ibson was neutralized by that of the true owners. He cites *Hunnicutt* v. *Peyton,* 102 U. S., 333, 26 L. Ed., 113, and the Tennessee

cases of *Iron Co.* v. *Railroad,* 131 Tenn., 221, and *Jones* v. *Coal Creek Mining Co.,* 133 Tenn., 183, and authorities therein cited, for this holding.

*Iron Co.* v. *Railroad,* was a case of an interlap—one grant over a part of another—and is distinguished on its facts in that, while the defendant with the weaker title first entered, he placed his actual possessions *on the interlap,* and the true owner coming later, within three years, placed his possessions, likewise, *on the interlap.* On principle and authority the constructive possession of the true owner thereupon neutralized the possessions of the holder of the weaker title and restricted him to his actual enclosure. The court in that case quotes approvingly from *Creech* v. *Jones,* 5 Sneed, 632, and *Norvell* v. *Gray,* 1 Swan., 96, 107, language sustaining the conclusion. But the situation herein presented was not dealt with. Here the true owner subsequently entering placed no actual possessions within the boundaries of Ibson's constructive possession.

In *Jones* v. *Coal Creek Mining Co., supra,* it appears that the contest was between two claimants, neither of whom had title—between two trespassers. The Coal Creek Co. was first in possession, and the court holds, stating a suppositious case, that, if it had been the true owner, the entry of a trespasser would not have had the effect to drive back the Coal Creek Company to its enclosures, saying, "in such case the law regards the possession is with the true owner as a superior right, and if, *while he is in actual possession of his land,* a claimant without title enters, he will be confined to his actual enclosures though he have color of title." (Italics ours.) But this is not the instant case. However, the court adds, "this is upon the ground that there can be only one possession of land, and in a contest between the true owner

and a trespasser, both attempting to hold actual adverse possession at the same time, the constructive possession as to that part of the land outside the actual enclosures is held to be that of the owner.'' In support of this general statement, Tennessee cases heretofore referred to, with others, are cited, and also 2 Corpus Juris, pp. 242, 243 and *Hunnicutt* v. *Peyton,* 102 U. S., 333, 26 L. Ed., 113 For example, the case of *White* v. *Lavendar,* 5 Sneed, 648, is strongly relied on, and it does emphasize the general rule that, ''the legal seizin, or possession, in judgment of law, was in the party having the legal title.'' But in that case there had been ''no actual possession, on either side, within the interference,'' and in this situation the court quite readily reached the conclusion that, when the holder of the better title entered, although subsequently to the other claimant, and placed his possessions within his boundaries, although outside of the interlap—this being another interlap case—his constructive possession overrode that of the other claimant, who was *without any actual possession on the interference.*

Nor do other Tennessee cases cited for appellees appear to us to be controlling, such as *Berry* v. *Walden,* 4 Hay., 174, and *Walker* v. *Fox,* 85 Tenn., 154. In *Berry* v. *Walden,* it was held only that, ''where a tract is covered by two grants, and both grantees are in possession of the part so covered, by both, the possession operates nothing; for it is deemed to continue in him who has the title.'' *Walker* v. *Fox,* decided only that when disputed land is covered by deeds of both parties and *each has a possession within the interference,* but neither has title, their possessions neutralize each other, as to the land within the lap not in actual possession.

Passing now to authorities from other jurisdictions cited by the learned Chancellor, he and counsel for ap-

pellees chiefly rely on *Hunnicutt* v. *Peyton,* supra. This leading case, and *Green* v. *Liter,* 8 Crouch, 229, 3 L. Ed., 545, also a number of cases from other states, are cited by 2 Corpus Juris, p. 243, for the following statement of the pertinent rule:

, "*Subsequent Entry by Owner.* If the claimant enters on land under color of title and, by his actual possession of part and claim of title to the whole, obtains constructive possession of the entire tract, and the owner of the true title afterward, and before the title by adverse possession is perfected, enters upon the same tract in another place, claiming the whole, the prior constructive possession acquired by the former is overcome by that of the latter, so that he can acquire title by adverse possession, as against the true owner, to only that portion of the land which he actually occupies."

But it will be observed that the case stated is that of a color of title claimant who claims title to the *whole tract* involved, upon which *same tract* the true owner subsequently enters, placing his actual possessions in a different place. In other words, the subsequent actual entry is within the boundaries of the adverse claimant under a prior entry. So that, once more, the case dealt with is not identical on its facts with that here presented. The true owner in that case entered his actual possession *within* the boundaries covered by the color of title, and thereby neutralized the adverse holding. In the instant case the true owner entered his actual possessions *outside* of the boundaries of the color of title— outside the disputed territory.

Looking to the leading case cited for the text above quoted from Corpus Juris, we find that the holding in *Hunnicutt* v. *Peyton,* supra, is thus stated in the headnote:

"When a person enters upon unoccupied land, under a defective title, and holds adversely, if the true owner be at the same time in actual possession of part of the land, claiming title to the whole, he has the constructive possession of all the land not in the actual possession of the intruder."

It will be noted that this statement of the holding in that case is consistent with quotations herein made from Corpus Juris, and with the principle that to be effective as an adverse possession the actual possession must be on the disputed territory. But, upon examination of the facts, it appears that in that case, as in the instant case, the true owner entered subsequently and within three years and did not place his actual possessions within the boundaries of the tract upon which the adverse claimant with inferior title had placed his actual possessions. This case, therefore, appears, when its facts are considered, to support the conclusion reached by the Chancellor.

But is this the rule in Tennessee? We think not. It is, of course, well recognized that the Supreme Court of the United States in dealing with land titles commonly follows the land laws of the several states from which the litigation comes to that tribunal. *Hunnicutt* v. *Peyton,* arose in Texas and it does not appear that in that State a statute similar to our Act of 1819 (Shannon's Code, sections 4456 and 4457) was then (1880), or is now, in force. And it is significant that in its holdings with respect to the effect of interlock possessions Texas not only differs from Tennessee, but stands alone. In 2 C. J. 245, under the sub-head, *"Where Junior Claimant is in Possession of Interlock. The General Rule"*, it is said:

"While there are some decisions to the contrary, the weight of authority is to the effect that if the junior

claimant is in actual possession of a part of the interlock he will acquire constructive possession of the whole of it, although the senior claimant is in possession of some land lying within the conveyance to him but not within the interlock.''

The only ''decisions to the contrary'' cited are from Texas, while the ''general rule'' is supported by numerous authorities from other States, including Tennessee and North Carolina.

The most exact statement coming to our attention of the facts of the instant case, coupled with the announcement of what appears to us to be the rule most consistent with our Tennessee statutes and decisions, is found in 2 Corpus Juris on page 244, as follows:

''Where a person with color of title to a portion of a large tract of land, the true owner of which is not in actual possession of any part thereof, takes actual possession of a part of the portion to which he has color of title and thereby acquires constructive possession of such portion, that if the true owner enters on a part of the large tract outside of such portion the constructive possession of the other to the limits of such portion is not defeated nor his possession restricted to his actual possession, but the true owner acquires constructive possession only of that part of the large tract outside the limits of such portion, and the other retains constructive possession of that part of such portion outside of his actual possessions.''

*Stull* v. *Rich Patch Iron Co.*, 92 Virginia, 253, is cited for this text. In the opinion in that case reasons for this rule are ably stated. Holding that the entry of the junior claimant upon the land in controversy and his occupancy of a part thereof, claiming title to the whole, the claimant under the senior title not then being in ac-

tual possession of any part of his tract, gives the junior claimant possession of his whole boundary, the court proceeds as follows:

"The possession of the claimant under the junior title, being an actual adversary possession, to the whole extent of his boundary, the entry and actual possession of the claimant under the senior grant, of lands outside of the lands in controversy would not have the effect of ousting or disturbing the claimant under the junior title as to any part of his tract. The entry, to be good for such purpose, must be made upon the land in controversy; for to oust an actual possession there must be an entry upon that possession. This was expressly held in *Fox* v. *Hinton*, 4 Bibb, 559-60, referred to above, and cited with approval by Judge LEE in *Koiner* v. *Rankin*.

"If the subsequent entry of the claimant under the senior grant on his tract, outside of the land in controversy, would have the effect of ousting the claimant under the junior grant of any part of his boundary, then he might be ousted or dispossessed not only without his knowedge, but without any means of acquiring knowledge, and without even knowing that any person other than himself claimed title to the land. Under the loose system of granting lands in force at an early day in this State, it is well known that the same land was frequently granted to two or more persons, without any fault upon their part. The claimant under the junior grant, thinking that he had good title to the land, entered upon and actually occupied a part, claiming title to his whole tract. He afterwards sells it for a full price, and his vendee takes a like possession and makes a like claim to the whole tract; and thus the land may be held, as in this case, for fifty years or more. The claimant under the senior grant then brings his action to re-

cover the land embraced in the boundaries of the junior grant. Upon the trial of the case, the claimant under the junior grant learns for the first time that the senior grantee, or those who claim under him, had, before the statute of limitations had run in favor of those claiming under the junior grant, entered upon a part of the land embraced in the boundaries of the senior grant, five or maybe twenty miles away (for these grants frequentiy contained from 100,000 to 500,000 acres), and had cleared and cultivated a few acres, claiming title to the whole tract. To allow a plaintiff to recover under such circumstances would work the grossest injustice to the claimants under the junior title.

"The claimant under the senior patent knows, or ought to know, his own boundaries, and that another has settled within them, claiming and exercising dominion over the lands in controversy, and if under these circumstances he remains quiet, allows the claimant under the junior grant to believe he is the true owner of the land, and fails to assert his right to the land in controversy by action or entry within the statutory period, he ought not to be allowed to recover. The statutes of limitations in real actions are founded upon a wise and salutary policy. They require nothing but reasonable vigilance upon the part of the owner, and are necessary for the repose of *bona-fide* settlers in the regions of our wild and uncultivated lands."

This reasoning is so sound and applicable to conditions in this State that we have quoted copiously from the opinion.

But whatever may be this rule of property in other jurisdictions, and while we find no Tennessee decision dealing with this exact situation, we are convinced that under our particular statutes and decisions, when A,

having good title defining his boundaries to a larger tract of land, without an actual or occupancy possession thereon, B enters thereon under good color of title to a smaller tract lying within A's boundaries, and establishes an actual possession or occupancy within the boundaries of his smaller tract, that B's possession *to the extent of his boundaries* is of that exceptional constructive character which is effective to put in operation the running of our seven year statute; and, further, that the subsequent location by A of actual possessions on his larger tract, but *outside of the boundaries of B*—the disputed area—will not reconfer by construction the possession of A, within the boundaries of B, nor suspend the running of the adverse possession statutes.

In at least two reported cases in this State, *Hebard* v. *Scott,* 95 Tenn., 467, and *Snapp* v. *Purcell,* 2 Tenn. Ch'y. Appeals, 565, affirmed by this court, it was held, upon facts showing adverse entries and holdings by color of title claimants only within larger tracts of land held under superior titles, that the seven year adverse holding perfected the titles of the color of title claimants, not only as to their actual or enclosed possessions, but to the extent of the boundaries of their titles.

These holdings are wholly inconsistent with the theory that the constructive possession of the one having an inferior title or holding under color of title only is neutralized except as to his actual enclosure by the constructive possession of the true owner without actual possession located within the boundaries of the inferior title. In order to reach the result indicated in these cases, it was necessary to hold that the intruder had been in adverse possession for every day of the seven years prescribed by the statute, and it is an irresistible deduction that he must have been in adverse possession to the ex-

tent of his color of title boundaries throughout the first
two or three years of the term. The analogy is convinc-
ing in the instant case, wherein Ibson is found to have
had an enclosure at his home place within the boundaries
of his deed for approximately two years, at least, before
actual possessions were entered by the Church heirs
within the general boundaries of the grant, outside of Ib-
son's boundaries. And, therefore, Ibson was holding ad-
versely to the extent of his boundaries at the time of the
making of the pertinent conveyances to the complainants.

The opinion of Mr. Justice SHIELDS in *Green* v. *Cum-
berland Coal Co.*, 110 Tenn., 35, has direct application
here. It was a champerty case. It was held that our
statutes (Shannon's Code, 3171, 3172) make a sale of
land utterly "void where the seller has not by himself,
agent, tenant, or ancestor, been in actual possession, or
taken the rents and profits, for one whole year next be-
fore the state;" that a sale of lands held under a perfect
title, but in the adverse possession of another at the time,
is within this statute and "no particular length of pos-
session is necessary to make the sale void;" and that no
pleading specially raising the defense of champerty is
required. It was also said, pertinent here, that while,
"where there is no part of the land in actual possession,
the constructive possession is with the party  holding
the superior legal title; but where a portion of the land
is in actual adverse possession, the party so holding has
constructive possession of all the premises outside of his
enclosure to the limit of his claim or assurance of title,
and such constructive possession is superior to that which
results merely from the ownership of the legal title, and
is sufficient to put in operation the statutes of limitation
to the entire tract." And the court says that, "this char-
acter of constructive possession, connected as it always

is closely with actual possession, and generally actual occupation of some part of the land, is clearly within the policy of the statute against champerty.'' All of these propositions are clearly supported by our decisions cited in the opinion.

In the case of *Mansfield* v. *Northcutt,* 112 Tenn., 536, it was held that one claiming a 1,000 acre tract of mountain land under a conveyance defining boundaries, who had a house thereon occupied by a tenant, was in such possession of the entire tract as would support unlawful entry and detainer against one who entered on the tract under a hostile title—this being so held apparently without reference to the validity of plaintiff's title otherwise. And it is significant that Mr. Justice SHIELDS, recognized as high authority on our land laws, in the course of his opinion has this to say, particularly pertinent to the present discussion: ''Constructive possession of this nature, connected as it is with actual possession of a part of the premises, is of a *higher character than that which follows the legal title.* It will perfect a defective title, under the statutes of limitation, and raise a presumption of grant when held for sufficient periods of time. A conveyance of lands so held by another is void for champerty.''

It will be observed that we have italicized the language of Mr. Justice SHIELDS, in which he refers to constructive possession accompanied by an occupancy, as of a higher character than that which follows the legal title. This is significant. Many of our authorities support this distinction in varying language, sometimes speaking of ''virtual'' and sometimes of ''effective'' constructive possession. We have been impressed with the absence of an apt phrase to express tersely the idea conveyed by the language used by Mr. Justice SHIELDS. However, that a distinction does exist in favor of this particular

type of constructive possession is repeatedly and consistently recognized by our cases as adequate to perfect title under our statutes.

We might multiply the citation of decisions of this court indefinitely to sustain the general proposition that in cases of conflicting land titles the possessions must be located within the disputed area in order to be effective; also, "that, in order that the possession of one claimant shall neutralize the possession of the other, both must be in the actual possession of some part of the disputed land." *Mitchell* v. *Churchman's Lessees,* 4 Hum., 218, 219, which was a champerty case. In addition to cases cited, the following, dealing directly with cases of interlap, not altogether analogous, but difficult to distinguish on principle, appear to be directly in point: *Wright* v. *Hurst,* 122 Tenn., 656; *Elliott* v. *Coal & Coke Co.,* 109 Tenn., 745; *Waddle* v. *Stuart,* 4 Sneed, 534; *Kittel* v. *Steger,* 121 Tenn., 400; and the long line of cases beginning with *Napier* v. *Simpson,* 1 Ov. 448, cited by Mr. Shannon in Note 34 to his Code, section 4456.

It results that the deeds in question were champertous, not as to Ibson's actual enclosures only, but as to this entire tract on which his actual possession was located, and the decree of the Chancellor will be so modified.