Fair *v.* Curry *et al.*

(*Nashville*, December Term, 1943.)

Opinion filed January 8, 1944.

CAMPBELL YERGER, of Memphis, for complainant.

HARSH, HARSH & HARSH, of Memphis, for defendant.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is an appeal from a decree sustaining a demurrer and dismissing a bill of review. The bill was filed January 8th, 1943, in a double aspect, seeking (1) to review and revise for error apparent a decree entered on the 12th day of August, 1940, which "declared void and cancelled" a deed executed and duly recorded in 1927 by Susie and Noah Curd, defendants in the instant cause, complainants in the former cause, to B. B. Fair, defendant in the former cause, complainant herein, and which decree purported to divest out of said Fair title to the land conveyed to him as aforesaid, and vest the same in "the grantors herein, to wit, Susie Curd and her husband, Noah Curd;" and (2) to set aside and vacate said decree for lack of service on the defendant therein, B. B. Fair, and for fraud in this regard.

A demurrer challenging the bill as multifarious and on other grounds was overruled by the Chancellor with leave to rely thereon in the answer, which was thereafter filed. On the hearing, the allegations impeaching the

service of process in the former suit and setting forth the proof therein, were abandoned, and these matters expunged and the bill dismissed by consent, in so far as it related thereto. The Chancellor then sustained the demurrer and dismissed the bill of review "in all respects in so far as it affects the title to the property described in the bill." To this part of the decree Complainant Fair excepted and prayed and was granted an appeal.

We quote from the reply brief of appellees the following extract (omitting citations to the record) which fairly sets forth the substance of the controversy presented to this Court.

"The only error of law complained of in the former decree is stated in the complainant's Assignments of Error to be substantially that the Chancery Court was without authority to declare a deed void and to cancel it, and to divest title, *in haec verba*:

" 'The specific error complained of is that the said deed is presumed to have been delivered by its registration, and the Court cannot legally under the Constitution divest title out of B. B. Fair on a holding that the consideration was never paid. The only remedy is (and the Court should have so ordered) that the debt be set up and a lien declared, and the property sold rather than forfeited.'

"The respondents raised the question that this did not constitute a cause of action by several grounds of their demurrer, which were sustained by the Court.

"The complainants in the former proceeding set out their cause of action against B. B. Fair as follows:

" 'Your complainants would further show to the Court that at the time the said warranty deed was entered into, complainants believed they had a good and valid right

to convey said property; that the consideration for the conveyance of said property as evidenced by the warranty deed was $1,850.00; that the defendant B. B. Fair on an unstated day in September, 1927, entered into a Trust Deed, the original of which is attached to and made a part of this bill, as Exhibit IV, whereby the said B. B. Fair conveyed to W. L. Nunnally as trustee, the same property conveyed to him by the said warranty deed for the purpose of securing the payment to Susie Curd of 175 interest-bearing promissory notes of even date with the trust deed, each for the sum of $10.00, the first falling due November 1, 1927, and the balance monthly thereafter; that shortly after entering into the above warranty and trust deed, it became known to the parties thereto that the complainants were unable to provide a clear title to the property attempted to be conveyed and that, therefore, the transaction was abandoned. Complainants would further show to the Court that the defendant, B. B. Fair, has paid no part of the consideration of the warranty deed and has no interest or title in the therein described property, but that the same is of record in the Register's Office in Shelby County, Tennessee, and exists as a cloud upon the title to the property therein described.'

''And the bill prayed:

'' '(4) That the warranty deed from the complainants to B. B. Fair, the original of which is attached to and made a part of this bill, be declared void and cancelled and that whatever title it may have conveyed to the defendant, B. B. Fair, be divested out of him and reinvested in the complainants, or in the parties thereto entitled.'

''The Warranty Deed to B. B. Fair was in the possession of the complainants in the former suit and made

exhibit to their original bill. Service of subpoena was had on B. B. Fair on October 31, 1935. *Pro confesso* was taken against B. B. Fair on November 15, 1935. The Court decree, which is sought to be impeached, found that B. B. Fair had not paid the consideration, and that *pro confesso* judgment had been taken against the defendant, B. B. Fair, and ordered that the *pro confesso* be made final and that the Warranty Deed, 'is hereby declared void and cancelled and any and all right, title and interest in and to the property therein conveyed to said B. B. Fair is hereby divested out of him and vested in the grantors therein, to-wit, Susie. Curd and her husband, Noah Curd.' ''

We have, then, before us the single question of whether or not the decree should be reviewed and revised for error apparent on the face of the pleadings and decree.

It will be seen that the bill in the former suit alleged that, after execution of a deed which was duly recorded, conveying the land to Fair, and after he had conveyed this land to one W. L. Nunnally, in trust, to secure the payment of a series of purchase money notes, a flaw was discovered in the title, and that, "therefore, the transaction was abandoned." It was further alleged that the purchaser "paid no part of the consideration of the warranty deed," etc. The decree of the Chancellor has been above recited. It does not affirmatively appear from the face of the record in the former suit whether or not Fair went into possession of the land conveyed to him, or was in possession at the filing of the suit. However, a prayer for a receiver to collect rent, etc., pending the suit implies that the complainants therein were not in possession.

Was the Chancellor in error in decreeing, in the former suit, a cancellation of this conveyance, divesting title out

of the grantor, vesting the title in the complainants who had conveyed it to Fair, and who had, in turn, conveyed it to a trustee, and removing this conveyance as a cloud?

█ It is the general rule, recognized in this State in numerous cases, that when a deed has been executed and duly recorded the title is vested in the grantee and it cannot be revested in the grantor by a surrender or redelivery of the deed to the grantor, although this be done in good faith with the intention of cancellation and rescission of the purchase and conveyance. 26 C. J. S., Deeds, secs. 174, 175, p. 580; 18 C. J., 406, 407, 408; American Jurisprudence, Volume 16, page 643, cites many authorities for the proposition that, "Title does not revest in the grantor by destruction of the deed by the grantee with the intention of so revesting title, or by surrender or redelivery of the deed by the grantee to the grantor;" and among our own cases are *Morgan* v. *Elam,* 12 Tenn., 375; *Howard* v. *Huffman,* 40 Tenn., 562, 563, 75 Am. Dec., 783; *Atkinson* v. *Atkinson,* 23 Tenn. App., 269, 130 S. W. (2d), 157, *certiorari* denied; *Poindexter* v. *Rawlings,* 106 Tenn., 97, at page 103, 59 S. W., 766, 82 Am. St. Rep., 869; *Page* v. *Meath,* 3 Shannon Cas., 717; *Kelly* v. *Kelly* (Tenn. Ch. App.), 58 S. W., 873.

█ It is true that our cases recognize that an agreement to abandon and rescind and revoke a conveyance of land may be held in equity to effect a revesture of title, but this only on the principle of estoppel. We quote from the opinion in *Howard* v. *Huffman, supra:*

"By the mere act of returning the deeds to the vendor, whatever may have been the intention, no title could revest in him; to effect this a re-conveyance was indispensable.

"It is well settled that even the destruction of a deed for land will not operate to re-vest the title in the grantor.

"It is, perhaps, true that the intentional surrender or cancellation of the deed, made expressly with a view to re-vest the title in the grantor, might have the effect of a re-conveyance; but this would be upon the principle of estoppel. The grantee having voluntarily destroyed or surrendered the deed, with the intention of defeating his own title, would be estopped from setting it up, or showing its contents by parol evidence. 4 Kent's Com., 196, note b."

It is obvious, we think, that the writer is not referring to a registered conveyance. And see *Howard* v. *Massengale,* 81 Tenn., 577, at page 586, where, it is said that, "where a vendee *under an unregistered deed* has, without reconveying title, surrendered, cancelled or destroyed his deed, and consented that his vendor might convey the title to another person, and the same has therefore been done, such second vendee will thus obtain a good title, though in strictness the title had passed out of the vendor by the first conveyance and had never returned to him. For in such case, the deed to the second vendee being registered, the title would *prima facie* be in him; and this title the vendor would be estopped from denying by the deed itself, and the first vendee by his act in surrendering or cancelling his deed that the vendor might convey to another," citing authorities.

So that we think it clear that the decree in the case before us purporting to divest out of the grantee under a registered deed the title thereby conveyed and vest it in the complainants therein was erroneous. The doctrine of estoppel was not invoked or relied on and no facts ap-

pear upon the face of the pleadings or decree that bring it within the principle of estoppel. We have here a registered deed, carrying notice to all, and no rights of third parties, or subsequent purchasers are here involved. The issue lies between the original parties only to this registered conveyance. No supporting equities whatever are set up or relied on. The case falls within the general rule that the return or destruction by agreement of the deed after delivery and registration, although with the intention to rescind the conveyance, is ineffective to revest the title. See cases above.

We are not dealing with a bill of review for newly discovered evidence, or on other grounds calling for a reconsideration of the facts, in which class of cases we concede to the Chancellor a well nigh controlling discretion, but with a bill challenging a former decree for error apparent on the face of the decree and record. Since the pleadings show no more than a case of voluntary, verbal agreement to rescind, without intervening equities, the decree so rested must be held to be erroneous and invalid. The cause is reversed without prejudice to the right of the vendors to subject the lands by proper proceedings to the payment of any valid claim for purchase money.

### ON PETITION TO REHEAR.

A petition to rehear is presented in which it is charged that, "The Court in its opinion erroneously stated the facts of the case, and clearly indicated that it did not know the status of Appellees in the litigation." The petition then quotes a paragraph from the opinion beginning with the words, "So that we think it clear that the decree in the case before us," etc., and curtly comments:

"This finding is untrue." Despite the discourtesy of this callow comment, the Court, in the interest of justice, responds briefly to this petition.

It should be obvious to counsel representing petitioner that in the paragraph quoted this Court was referring to and considering the question presented to this Court on appeal as to whether or not there were errors apparent on the face of the decree entered in Cause No. 41381 on the 12th day of August, 1940, which was "the decree sought to be reviewed herein." In the opening part of our opinion, we quoted from the reply brief of appellees their full statement of the question presented to this Court, and which was passed upon, by which we think it is made to appear, as remarked in our opinion, that there was brought before us for determination "the single question of whether or not the decree (of August 12th, 1940) should be reviewed and revised for error apparent on the face of the pleadings and decree." In the petition for a rehearing now before us, counsel apparently complain that this Court "did not decide nor consider whether B. B. Fair was estopped to assert this claim against these third parties and subsequent purchasers," and say that, "This question was properly raised by the demurrer which was sustained."

In the first place, this Court was fully justified in confining its opinion to a discussion of what the brief of counsel for appellees, as before indicated, submitted for determination,—the question of law as to whether or not "the Chancery Court was without authority to declare a deed void and to cancel it and to divest title," etc., as it undertook to do on the grounds set forth in the pleadings and decree of August 12th, 1940, which question was raised by demurrer to the bill of review and which demurrer was sustained by the Chancellor.

In the second place, we do not understand that any question of subsequent or innocent purchaser was, or could properly have been, before this Court in the state of the record. Conceding that one of the numerous grounds of demurrer was "because the bill on its face shows that E. J. Curry and Pauline Curry, individually and as Trustees, were innocent purchasers for value," we do not understand the Chancellor to have sustained the demurrer on this ground, and it is apparent that he could not consistently have done so. The bill challenged by the demurrer made no such statement or concession, but directly to the contrary, and on demurrer its allegations of fact are admitted to be true. This defense on the part of the Currys was set up in their answer, but this answer was not before this Court and its allegations could not, of course, be considered.

Upon reconsideration of the case, the Court is satisfied with and reaffirms its holding with respect to the invalidity of the decree challenged by the bill of review. The case goes back to the Chancery Court with this holding on this question as the established law of the case. The rights of the Currys, as alleged subsequent and innocent purchasers, are for determination by the Chancellor upon proof and such further proceedings as may be proper. This Court expresses no opinion on the question whether or not the Currys can show themselves to be entitled to rights as such in the face of the outstanding registered title vested in the Fairs by the deed erroneously cancelled and set aside by the decree of August 12, 1940.

The decree of this Court reversing that of the Chancellor and remanding the cause for further proceedings is reaffirmed. The petition to rehear is dismissed.