JONES et al. v. MOSLEY et al.
MOSLEY v. FARRIS et al.—198 S. W. (2d) 652.

Middle Section. October 26, 1946.

Petition for Certiorari denied by Supreme Court, January 11, 1947.

Raulston & Raulston, of South Pittsburg, for Jones et al.

Solon L. Robinson, of Pikeville, for J. C. Mosley.

Charles C. Moore, of Chattanooga, for Fred Wilson.

FELTS, J. The numerous pleadings and the proof in these consolidated suits presented these two ultimate and controlling issues:

(1) Whether a mining lease of coal land in what is known as the Jacob Brown tract in Sequatchie County, made July 7, 1937, by J. C. Mosley and wife to Fred Jones and John Cartwright, is valid and, if so, whether it covers all the coal land in this tract, including that later leased by Mosley and wife to Ed Tate and Ernest Layne.

(2) Whether J. C. Mosley acquired title to this tract from the heirs of Jacob Brown, deceased, excluding a one-tenth undivided interest disclaimed by him and claimed by Marion Glen Brown, including a one-tenth interest claimed by him and by Anna Drake, both through Octa Brown McIllvenna, and a one-fifth claimed by him and by Fred Wilson, both through Ibby Brown Farris; that is, whether this one-tenth and this one-fifth are owned by Mosley or the former is owned by Mrs. Drake and the latter by Fred Wilson.

The only attack upon the validity of the lease to Jones and Cartwright was that made by Mosley; he sought to rescind for fraud and failure of the lessees to pay royalties required by the lease. Wilson and Mrs. Drake did not question the lease, but merely asserted their respective claims to an interest in the reversion and their rights to share in the royalties which had been paid into court and to have an accounting from Mosley for royalties he had received and timber he had sold from this land for several years.

The Chancellor found and decreed that the lease by the Mosleys to Jones and Cartwright was valid and covered "the coal in the entire land known as the Jacob Brown tract," that the later lease to Tate and Layne was fraudulent and void, and that Jones and Cartwright recover for the trespasses on their premises; and he ordered a reference to fix the amount of their damages.

He found and decreed that the land was owned by tenants in common as follows: J. C. Mosley three-fifths, Fred Wilson one-fifth, Mrs. Drake one-tenth, Marion Glen Brown one-tenth subject to the dower of his mother, Mrs. Drake; that these tenants should share in these proportions, the royalties paid into court; and that Mosley should account to the others for their shares of the royal-

ties he had received and the timber he had sold, less the expenses he had incurred in defending an ejectment suit which had been brought against him by the Tennessee Consolidated Coal Company to recover this land. The Master was directed to state the account in the reference ordered. The Chancellor also decreed that the land should be sold for partition under Wilson's crossbill.

J. C. Mosley appealed and insists that the Chancellor erred in decreeing that the lease to Jones and Cartwright "is valid and covers all the land in the entire tract known as the Jacob Brown tract," and in allowing them a recovery against him for damages; and that the Chancellor should have sustained his claim to a nine-tenths interest in the land and should have held that the claims of Mrs. Drake and Fred Wilson were barred by his adverse possession and their deeds were champertous and void.

*The Mining Lease.* J. C. Mosley and wife leased this land to Jones and Cartwright in June 1937, describing it as the Jacob Brown tract "containing about 425 acres in the whole tract but second party leases 100 acres on the east side of said tract above the main clifts." The parties later decided to make another lease with a better description. From one of Mosley's deeds Jones and Cartwright had drawn the lease of July 7, 1937, which stated the land was in Sequatchie County, Tennessee, and described it as follows:

"Lying on the top of Cumberland Mountain; beginning at the top of the hill in the branch in John Layne's line; thence with the meanders of said branch to Levi Hackworth's line; thence with Levi Hackworth's line north 60 poles to a stake and pointers; thence north 30 west to the creek; thence up said creek to a white oak, near the fork of said creek; thence south 31 east to John Layne's corner; thence with Layne's line east to another

corner of John Layne's line; thence south 24 east to the beginning, containing 376 acres, more or less. This lease covers only 100 acres coal land on east side of said tract.''

Mr. and Mrs. Mosley both read this lease, and he suggested some changes, which were made, one of them being the insertion of the last sentence above quoted. Then all the parties signed the lease in the presence of two witnesses. The great weight of the proof shows that the Mosleys signed this lease understandingly and no advantage whatever was taken of them.

■ But apart from this, they were in no position to rescind, since they had not returned or offered to return the royalties they had received over a period of some two or three years. Brady v. Oliver, 125 Tenn. 595, 147 S. W. 1135, 41 L. R. A., N. S., 60, Ann. Cas. 1913C, 376; Hawkins v. Byrn, 150 Tenn. 1, 261 S. W. 980; Lamborn & Co. v. Green & Green, 150 Tenn. 38, 262 S. W. 467.

The preponderance of the proof is that the Jacob Brown tract actually contains only about 120 or 125 acres, that practically all the coal is within the area above ''the main clifts'' and within the east 100 acres covered by the lease to Jones and Cartwright, and that the coal land later leased to Tate and Layne is within this 100 acres. See county surveyor's map (Tr., Vol. II, p. 41).

■ So we concur in the Chancellor's finding that the lease to Jones and Cartwright is valid and covers all the coal land in the Jacob Brown tract, including that later leased to Tate and Layne; and we think the Chancellor properly declared the later lease void and properly allowed Jones and Cartwright a recovery for the damages sustained by them.

*The Ownership of the Reversion.* This entire tract was owned by Jacob Brown, who died intestate about 1905.

He had five children: (1) John Brown; (2) Priscilla (Siller) Brown Oliver; (3) Laura Brown Hicks, deceased, represented by her four children; (4) Marion Brown, who died intestate in 1903, leaving his wife (now Mrs. Drake) and his two children, Octa Brown McIllvenna and Marion Glen Brown (called Ira Brown in his youth); and (5) Ibby Brown Farris. Mosley was related to the Jacob Brown children and was reared in their home. Many years ago all of them left this land and went elsewhere to live, Mrs. Drake and her two children living in Illinois and Mrs. Farris living in Mississippi.

J. C. Mosley took possession of this land some twenty-five or thirty years ago and has been in possession ever since. John Brown and Siller Oliver conveyed to him their two-fifths interest in the land by deed dated January 30, 1925, recorded January 27, 1931. The four Hicks children conveyed to him their one-fifth by two deeds, one dated January 23, 1942, recorded March 5, 1942, the other dated March 1, 1942, recorded November 10, 1943. There is no dispute as to his ownership of these three-fifths of the land.

He claimed the one-tenth of Octa Brown McIllvenna under a deed from her and her brother, Ira Brown, dated March 20, 1932, purporting to convey to him their one-fifth; but he disclaimed the one-tenth of Ira or Marion Glen Brown. Mrs. Drake claimed the one-tenth of her daughter, Octa Brown McIllvenna, under a deed dated December 13, 1941. Mosley also claimed the one-fifth of Ibby Brown Farris. This claim was that in June 1937 he purchased her one-fifth, she mailed him a deed, he returned it to be acknowledged, and she refused to send it back to him; and that she later undertook to deed this one-fifth to Fred Wilson, who had knowledge of his purchase and his deed. Wilson denied such knowledge, and

claimed Mrs. Farris' one-fifth under a deed from her dated December 3, 1941, recorded December 15, 1941.

The Tennessee Consolidated Coal Company sued J. C. Mosley in ejectment for this land in 1939, and that suit was decided in his favor upon the ground that he had held adverse possession of the land for himself and his co-tenants for more than seven years. While that suit was pending, on November 16, 1940, he took his deed from Octa Brown McIllvenna and Ira Brown to the register's office. The register noted it for registration, making the notation on the deed but not on the note book, and told him it would be a day or two before the deed could be recorded. He then withdrew it, took it to the office of the clerk and master, and had it filed in that suit as part of his title papers.

After that suit ended he got permission to withdraw that deed, took it back to the register's office, and the register again noted it for registration and recorded it January 14, 1942. In the meantime, however, Mrs. McIllvenna made the deed to her mother, and it was recorded December 17, 1941, nearly a month before Mosley's deed from her was recorded.

Counsel comment that the signatures on this deed appeared to have been erased, and that Mosley admitted he had not paid Mrs. McIllvenna for her interest in the land. The original deed was not sent up; the Chancellor did find that it was mutilated and in bad condition. There was, however, no attack upon its genuineness so far as Mrs. McIllvenna was concerned. As to her it was not impeached in the pleadings or the proof. While Marion Glen Brown denied signing it, she did not. An answer was filed for her, but she did not testify; nor did her mother, Mrs. Drake.

The Chancellor did not hold this deed invalid; he merely held it inferior to Mrs. Drake's deed because her deed was registered first and there was no proof she had notice of the earlier deed. Code, Sec. 7667. The registration of this earlier deed dated, not from the time it was first noted and withdrawn, but from the time it was later noted and recorded, so ruled the Chancellor, following cases holding where a deed is noted for registration but is withdrawn before being recorded, it will be treated as not having been registered. Hickman v. Perrin, 46 Tenn. 135; Hughes v. Powers, 99 Tenn. 480, 42 S. W. 1; Turberville v. Fowler, 101 Tenn. 88, 46 S. W. 577; Thompson v. Blanks, 114 Tenn. 54, 84 S. W. 804; Johnson v. Robinson, 5 Tenn. App. 502.

■ And he held the statutes of adverse possession and champerty did not apply because "the possession of Mosley was the possession of all his co-tenants and he does not show an ouster or possession adverse to the other tenants." It is true where one tenant in common holds possession without giving the others notice of his adverse claim or doing some act amounting to an ouster of them, he will be treated as holding for all of them and not adversely to any of them. Drewery v. Nelms, 132 Tenn. 254, 177 S. W. 946; Sipes et al. v. Sanders et al., 17 Tenn. App. 162, 169, 66 S. W. (2d) 261, 264.

■ But the case is different where he takes deeds from the others conveying him their interests. This amounts to an ouster and a transfer of their title and right of possession to him; they cease to be tenants in common with him; and his holding from then on is exclusive and adverse to them. Hilton v. Duncan, 41 Tenn. 313; Taylor v. Blackwell, 141 Tenn. 184, 207 S. W. 738. As we have seen, John Brown and Siller Oliver conveyed their two-fifths to Mosley in 1925. From then on his possession

of these two-fifths was for himself and adverse to them. Likewise, when the Hicks children deeded their one-fifth to him, his possession of this one-fifth was for himself and adverse to them. So when Octa Brown McIllvenna deeded him her one-tenth in 1932, his possession of this one-tenth was for himself and adverse to her. As between her and him this deed was effective without being registered. Code, section 7665.

▓▓ Still we think the Chancellor properly denied Mosley's defense of adverse possession as against Mrs. Drake. He did not make out a case of adverse possession under the first section of the Act of 1819, because his deed from Mrs. McIllvenna had not been registered for seven years. Code, Sec. 8582. He did prove a case under the second section of that Act, Code, section 8584, his adverse possession under his unregistered deed being sufficient under the second section. Kittel v. Steger, 121 Tenn. 400, 117 S. W. 500; City National Bank & Trust Co. of Miami, Fla., v. City of Knoxville, 158 Tenn. 143, 11 S. W. (2d) 853. But this defense was not available to Mosley because it must be specially pleaded and he failed to do this. Southern Iron & Coal Co. v. Schwoon, 124 Tenn. 176, 216, 135 S. W. 785; Gibson's Suits in Chancery, 3d Ed., sec. 331. It is true he undertook to plead this in an amended or supplemental petition. But the Chancellor held it came too late. We think this was not an abuse of his discretion.

▓ We think, however, the Chancellor should have held Mrs. Drake's deed champertous. This matter did not have to be pleaded; that it appeared in the proof was enough. Nor was any particular length of adverse possession necessary; it was sufficient that the land was being adversely held at the time of the conveyance to Mrs. Drake. Green v. Cumberland Coal & Coke Co., 110 Tenn.

35, 72 S. W. 459; Allis v. Hunt, 155 Tenn. 155, 294 S. W. 509.

■■ Our statutes, Code, sections 7823, 7824, make utterly void every sale or grant of land adversely held. Section 7826 makes an exception in the case of a nonresident's sale of his land of which "no person, at the time of such sale, holds adverse possession by deed, devise, or inheritance." This does not say the deed must be registered; the words are not "by registered deed" but merely "by deed." Where the land is adversely held "by deed," registered or unregistered, the sale is champertous. Mosley was holding adversely by deed from Mrs. McIllvenna, and her deed to Mrs. Drake was champertous and void. Bleidorn v. Pilot Mountain Coal & Min. Co., 89 Tenn. 166, 195, 196, 204, 15 S. W. 737, 744; Saylor v. Stewart, 49 Tenn. 510.

The Chancellor found that Mosley had failed to carry the burden of proving Mrs. Farris had delivered him a deed conveying him her one-fifth; but that, granting she had done this, he had failed to prove Fred Wilson knew this before paying her the purchase price, $100; and that, therefore, Wilson was an innocent purchaser for value and acquired title under his deed from her.

With deference we differ with the learned Chancellor. As we see the proof, it preponderates in favor of Mosley's claim. According to his testimony, he purchased Mrs. Farris' one-fifth in June 1937 for $70, $10 cash and the balance to be paid in six months after the termination of any litigation over the land. He had a deed drawn embodying these terms and conveying her one-fifth to him, and he mailed this deed and a $10 check to her in Lambert, Mississippi. She signed this deed in the presence of C. L. Wilson, and mailed it back to Mosley. He wrote her about failing to acknowledge it, she replied she

would acknowledge it if he would send it back to her, and he mailed it to her for that purpose, but she refused to return it to him.

It is true Mosley was impeached by several witnesses, but he was sustained by more, and he was corroborated by his check, by two letters from her, and by her own admissions in her deposition, which was taken by interrogatories and cross-interrogatories. These letters were copied into his answer to Fred Wilson's cross-bill, and his answer stated the originals "are herewith filed and made a part of this answer," but they were mislaid or lost during the litigation. Mrs. Mosley, however, testified to his having received them, and Mrs. Farris really denied only one of them.

In her direct examination Mrs. Farris denied that she had deeded her one-fifth to Mosley, but in her cross-examination she admitted that she had signed the deed and mailed it to Mosley; that she had written him to send it back to her and she would acknowledge it and return it to him; and that he sent it to her and she destroyed it. In this connection she said:

"Cross Int. 8. What did you do with this deed, and why didn't you acknowledge it as you promised and mail it back to J. C. Mosley? Ans. I kept it as I found out that he would not pay me, if he got the deed before I got the money.

"Cross Int. 9. I will ask you to file said deed and make it exhibit No. 1 to this your cross-examination. Ans. I destroyed the deed and cannot file it.

"Cross Int. 10. At the time you signed said deed did J. C. Mosley pay you ten dollars on the purchase price for said interest owned by you in said land? Ans. Yes,

but in the meantime, I found out that he would never pay balance.

．　　．　　．　　．　　．　　．

"Cross Int. 13. Did you write a letter to your nephew, J. C. Mosley on June 30, 1937, and if so, is the following copy a correct copy of said letter, which is as follows:

"'June 30, 1937.

"'Dear Nephew:

"'In regards to the deed Mr. Wilson (C. L. Wilson) said it would be allright for him to sign the deed & I didn't know. You should have told me. I asked J. Farris & he said he thought it would be all O. K. as Mr. Wilson attends to business for fols. Guess you had better send the deed back & have it acknowledged before the County Clerk, that is all I know to do. I am real sorrowe I made that mistake, but its never to late to write wrongs. If you want me to have it signed by the County Clerk send it back.'

"' Your Aunt,

"'Abbie Farris'

"Ans. I remember writing a part of this letter, but not all of it. I did intend to acknowledge the deed, but was told that if I did I would never get pay for the land, so I destroyed the deed."

There was no dispute as to the terms of this deed. Mosley had had it drawn by an attorney, and Mosley produced a copy of it. When Mrs. Farris signed and mailed it to Mosley, this was a delivery, and it transferred her interest to him and vested title in him, subject only to being defeated, under our registration statutes, by a creditor of Mrs. Farris or an innocent purchaser from her. As between the parties to this deed, it was effective without being acknowledged or registered. Code, section

7665; Smith v. Cross, 125 Tenn. 159, 178, 140 S. W. 1060; Campbell v. Home Ice & Coal Co., 126 Tenn. 524, 530, 150 S. W. 427.

 When Mosley sent this deed to be acknowledged by Mrs. Farris and returned to him, her destruction of it did not divest the title out of him or revest it in her, but it remained in him. Fair v. Curry, 180 Tenn. 650, 655, 177 S. W. (2d) 827, 829. In that case it was said:

" 'The title does not revest in the grantor by destruction of the deed by the grantee with the intention of so revesting title, or by surrender or redelivery of the deed by the grantee to the grantor;' and among our own cases are Morgan v. Elam, 12 Tenn. 375; Howard v. Huffman, 40 Tenn. 562, 563, 75 Am. Dec. 783; Atkinson v. Atkinson, 23 Tenn. App. 269, 130 S. W. (2d) 157, certiorari denied; Poindexter v. Rawlings, 106 Tenn. 97, at page 103, 59 S. W. 766, 82 Am. St. Rep. 869; Page v. Meath, 3 Shannon Cas. 717; Kelly v. Kelly, Tenn. Ch. App., 58 S. W. [870,] 873."

 As stated above, Mosley was in possession of this tract of land. When Mrs. Farris delivered to him her deed conveying to him her one-fifth, his possession of this one-fifth from then on was for himself and adverse to her. This was an adverse holding "by deed," under our champerty statutes; for in contemplation of law her deed still existed notwithstanding she had destroyed it. Her one-fifth interest being thus held adversely by deed, her deed to Fred Wilson was champertous. This is true for the reasons above stated in connection with Mrs. Drake's deed.

Wilson's deed being champertous and void, his cross-bill should have been dismissed; and we think Mosley's bill to set up his rights under his deed from Mrs. Farris should have been sustained. Though the land was still in

litigation, Mosley offered to pay Mrs. Farris the balance of the purchase price, and he tendered it in his bill.

It results that the Chancellor's decree will be modified as above indicated and as modified will be affirmed. A decree will be entered here adjudging Marion Glen Brown to be the owner of a one-tenth undivided interest in the land and J. C. Mosley the owner of the other nine-tenths, subject to a lien on one-tenth in favor of Mrs. McIllvenna for the purchase price owing to her and a lien on another one-fifth in favor of Mrs. Farris for the balance of the purchase price owing to her. The cross-bills of Fred Wilson and Mrs. Drake will be dismissed, and the cause will be remanded for distribution of the fund in court, and for further proceedings not inconsistent with this opinion. The costs of the cause are adjudged one-half against J. C. Mosley and the other half against Fred Wilson and Mrs. Anna Drake.

Howell and Hickerson, JJ., concur.