STATE ex rel. v. SEALS et al. No. 1.—171 S. W. (2d) 836.

Eastern Section. November 27, 1942.

Petition for Certiorari denied· by Supreme Court, May 8, 1943.

334

W. H. Eagle and Ernest F. Smith, Asst. Attys. Gen., for appellee.

Solon L. Robinson, of Pikeville, and Frank T. Fancher, of Sparta, for appellants.

McAMIS, J. This is an ejectment suit involving parts of a large tract of land containing ten thousand acres, more or less, known as the Herbert Domain, on which the State maintains a state institution. The bill named as defendants W. F. and John Seals. Later John A. Seals intervened by petition and was permitted to become a defendant. The Chancellor found and decreed in favor of the State of Tennessee, complainant, and both the original defendants and the intervening defendant have appealed to this court.

The record is large, the greater portion of the proof being devoted to the disputed issues of adverse posses-

sion. Upon the proof the Chancellor made a full and complete finding of facts and we shall state only the facts deemed necessary to a determination of the disputed issues which we find controlling.

The answer of W. F. and John Seals disclaims any interest in the large boundary described in complainant's bill except as to two tracts denominated in the answer as Numbers 1 and 2, respectively, located near the northeast corner of Grant 6808 and within the interlap between Grants 6808 and 9209. It is not necessary to notice further their claim to the latter tract since their claim as to it appears to have been abandoned after the filing of the intervening petition of John A. Seals. The Chancellor found that the claim of W. F. and John Seals to Tract Number 1, described in their answer and based upon Grant 5020, was located without the boundaries of the State's property as described in the bill and, further, that the description contained in Grant 5020 was so vague and indefinite that, from the weight of the proof, its boundaries could not be established.

After much of the proof had been taken John Andrew Seals was permitted to file an answer setting up as title to 775 acres, more or less, of the interlap between Grants 6808 and 9208 a deed to John A. Seals dated June 27, 1857, when John A. Seals was about two years of age. The deed was executed by O. H. P. Seals, father of John Andrew Seals, and James Seals, Jr., both of whom were named as grantees in the original Grant 9209 from the State. As to the remainder of the interlap, containing approximately 100 acres, the answer of John A. Seals asserts title to a one-half undivided interest therein as the sale heir at law of O. H. P. Seals, deceased, one of the original grantees of the State.

The State acquired title to the Herbert domain, including the disputed boundaries, by deed of Matilda Kittell in the year 1907. The Kittell title, by numerous intervening conveyances, runs back to Grant 6808.

In 1884 when John A. Seals was about 28 years of age he killed his uncle Bill Ferguson and became a fugitive from the State. He did not return until the year 1905. It is his insistence, however, that he left the property in charge of defendant W. F. Seals who was then about 10 years of age and that his possession of the property has been maintained ever since by tenants holding under W. F. Seals as his agent.

On September 24, 1887, a deed was executed by Captain James Seals to William H. Carpenter. This deed did not cover that part of the interlap lying between the western boundary of 6808 and Glade and Bee Creeks. However, in March, 1887, Carpenter executed to Kittell a deed which did cover this boundary and upon it, according to the Chancellor's finding Kittell established what is referred to in the record as Possession No. 8 more than 7 years prior to the conveyance to the State in 1907. This finding of the Chancellor is sharply challenged. Since the Chancellor's conclusion upon this point largely controls the question made under the first assignment of error we give first consideration to it.

A careful reading of the entire testimony bearing upon this question discussed in footnote 1[1] leads us to

[1]W. F. Seals was only 10 years of age in 1884 when John A. Seals left the State, it seems unnatural, to say the least, that the responsibility for looking after large boundaries of land should have been confided to W. F. Seals. Captain James Seals was living in the same neighborhood, was a man of experience and judgment and, it would seem, much better qualified to look after the property than a child

conclude that the Chancellor correctly held that Possession No. 8 was constructed and maintained by the Kittells,

10 years of age. Moreover, if the possession at this point was erected for the benefit of John A. Seals, it is singular that no effort was made to maintain it after the State acquired title although W. F. Seals was living in the neighborhood during all of the time from 1884 until this suit was instituted.

A careful analysis of the testimony of W. F. Seals with respect to Possession 8 and also Possession 7, shows that it is based upon alleged transactions with persons who are not available as witnesses either because of death or removal from the State. On the other hand, the State introduced Jasper Pressley who testified that he built Possession No. 8, as near as he can remember about 1898, and was paid by the Kittells. Other witnesses introduced by the State, though unable to fix the date, corroborate Pressley's testimony that the Possession was built by persons in the employ of the Kittells. Its location just within the boundaries of the Kittell lands suggests that it was placed there by them. If it had been placed there by Seals it seems reasonable to assume that it would have been constructed to protect the lands on both sides of the well known boundary of 6808.

It is true Mr. Blackburn says he did not see a Possession at this point when he surveyed the Kittell boundaries about 1900. However, there is positive proof that it was located there at that time and we think positive testimony on the point by disinterested witnesses carries the burden for the State.

This brings us to the next question of whether the effect of the maintenance of a Possession at No. 8 for more than 7 years before the State purchased in 1907 is neutralized by the maintenance of another Possession within the interlap at No. 7 by defendant John A. Seals through his alleged agent W. F. Seals. The proof shows that a mill on Bee Creek was operated by the Kittells or by persons claiming through or under them for many years. The operators of the mill lived near the mill though probably to the east of the eastern boundary of the interlap in question. However, there is considerable testimony to the effect that the clearing at No. 7 was cultivated by the permission of the Kittells by persons living at the mill property. Though W. F. Seals testified that he had charge of the property as agent for John A. Seals and rented it to different people for cultivation, there is no doubt that it was cultivated by the Pressleys while they operated

the State's predecessors in title, and not by W. F. Seals acting as agent for John A. Seals.

 Since the Possession at No. 8 was maintained by the Kittells for more than 7 years prior to the conveyance to the State in 1907 and was not neutralized by a Possession at No. 7 the title of the State to all of the disputed boundary lying within the interlap and described as Tract No. 1 in the answer of John A. Seals is complete because of 7 years adverse possession under registered color of title. (The deed had been recorded more than 7 years both in Cumberland and Bledsoe Counties when the State acquired the property in 1907.) The fact that Will F. Seals, as agent for John A. Seals, had,

the mill. Jasper Pressley testified that the Kittells got a part of the crops grown at No. 7. The Pressleys moved there about 1895 and began operating the mill.

Defendant John A. Seals relies upon testimony of two or three witnesses who state they heard W. F. and Captain James Seals state they were looking after the property for John A. Seals. One of these alleged declarations occurred about 1888 and another about 1884. There is no contention that John A. Seals ever left the property in charge of Captain James Seals and it was about the time of these alleged declarations that Captain James Seals conveyed the property as his own. There is much convincing proof that Captain James Seals acted for Carpenter and the Kittells for many years after his deed to Carpenter and there is no dispute that he continued to live on the property under Carpenter and the Kittells.

We think the weight of the proof shows that after the deed to Carpenter, at least, Possession No. 7 was not maintained for the benefit of John A. Seals. If W. F. Seals, in fact, acted as the agent of John A. Seals for a time it seems clear that he made no effort to act as the representative of John A. Seals after his father, Captain Seals, conveyed to Carpenter. Since Will F. Seals was not the tenant of John A. Seals but merely, according to defendant's contention, an agent charged with the duty of looking after the property, the principle that a tenant cannot, without notice to his landlord, attorn to a third person has no application.

meanwhile, maintained possessions on the Seals boundary outside of the interlap, if true, can have no bearing upon the title of the State to the disputed boundary. The establishment of the possession at No. 8 by the State's predecessors in title constituted an actual invasion of the Seals boundary. The statute of limitations began to run at that time. Round Mountain Lumber & Coal Co. v. Bass et al., 136 Tenn. 687, 191 S. W. 341; Coal Creek Mining Co. v. Heck, 83 Tenn. 497; Elliott v. Cumberland Coal & Coke Co., 109 Tenn. 745, 71 S. W. 749.

■ The exact question appears to have been before the court in the last case cited. A learned discussion and a full review of the authorities dealing with the question is to be found in the still later case of Allis v. Hunt, 155 Tenn. 155, 294 S. W. 509, 511, opinion by Mr. Justice Chambliss. The opinion quotes the following statement of the general rule:

"While there are some decisions to the contrary, the weight of authority is to the effect that, if the junior claimant is in actual possession of a part of the interlock he will acquire constructive possession of the whole of it, although the senior claimant is in possession of some land lying within the conveyance to him but not within the interlock." And see 2 C. J. S., Adverse Possession, Sec. 198, p. 801.

We think the foregoing principles settle the right of the State to the 775-acre tract described in the answer of John A. Seals as Tract No. 1.

■ As to the 100 acres described as Tract No. 2 lying southeast of Bee Creek, the proof shows that after Captain James Seals sold to Carpenter he maintained his residence on this tract as agent for his vendee and the Kittells. This holding was open, adverse, notorious and

under registered color of title for more than 7 years. It is not claimed, as we understand, that John A. Seals constructed or maintained a possession on this Tract and it was not within the boundary which he acquired by deed of James, and O. H. P. Seals in 1858. We conclude that the State and its predecessors in title perfected title by 7 years adverse possession under registered color of title and that any claim of John A. Seals to the disputed boundaries is barred by the statute of limitations of 7 years.

We find without merit the insistence that the deed from Seals to Carpenter excluded 450 acres. Without quoting the language of the deed, it is sufficient to say on this point that, in the opinion of the Court, the Seals deed conveyed the 450-acre tract in question.

As to the lands claimed by John, and W. F. Seals described as Tract No. 1 in their answer based upon Grant 5020 and located near the northeast corner of Grant 6808, adjoining what is known in the record as the Avery Overlap, we concur in the conclusion of the Chancellor that Grant 5020 cannot be located from the description contained in the Grant. Mr. Blackburn, a surveyor introduced by defendants, undertook to locate Grant 5020 and, according to his location, there would be a conflict between it and the Grant under which the State claims. However, according to Mr. Blackburn's location, the boundaries of the Grant cross Bee Creek 4 times. There is no mention of a crossing of Bee Creek contained within the description, and the land is described as lying on the waters of Beaver Dam, but the nearest the Blackburn location comes to Beaver Dam is 218½ poles. The only beginning point mentioned in the description is a "stake" and none of the corners are located.

342

■ According to the weight of the evidence the possessions claimed by defendants W. F., and John Seals are not within the boundaries of the State's property.

■ ■ The defendants W. F. and John Seals insist thatt he court erred in permitting complainant to introduce a deed from the Missouri Land Company executed for the purpose of perfecting its title after the bill was filed and erred in permitting the Missouri Land Company to become a party petitioner for the purpose of setting up its title for the benefit of complainant. The court allowed the Missouri Land Company to file its petition subject to any defenses interposed by defendants and announced that defendants would be entitled to a continuance of the case. It is true, of course, that the title of complainant is to be tested as of the date of the filing of the bill but we see no reason why the trial court could not, in the exercise of its discretion, permit the complainant to introduce and rely upon a subsequently acquired title, rather than force the complainant to dismiss its suit and file another bill, where the defendant was given full opportunity to meet the new matter brought forward. If there was any error in this action we think it was harmless and that no good purpose would be served by reversing the Chancellor's decree upon this ground.

■ Complaint is made that the Chancellor erred in admitting over defendants' objection portions of a deposition of Captain James Seals in another case involving a portion of the land now in dispute. Kittell v. Steger, 121 Tenn. 400, 117 S. W. 500. The purport of the testimony objected to is that Captain Seals, now deceased, testified in that case that he held the property for 10 years or more under Carpenter and the Kittells as their foreman or agent. We think this testimony was competent for the

purpose of rebutting the testimony of defendants' witnesses that Captain Seals had made certain declarations tending to show that he was acting for John A. Seals. The Chancellor appears to have been liberal with both complainant and defendants in the admission of testimony of this character and, without specific reference to all of the testimony referred to in the assignments of error, we think perhaps some incompetent testimony was admitted on both sides. We have reached the conclusions herein announced without considering the testimony objected to and without reference to it.

The evidence objected to and here made the basis of assignments of error consists mainly of depositions and exhibits filed in Kittell v. Steger, supra, and the findings of the trial court in that case, also the conclusion of the Supreme Court in that case that the Possession at No. 8, referred to in the opinion of the Supreme Court as Possession K, was established by Kittell. As noted above, some of this testimony, particularly the testimony of Captain James Seals, tends to rebut incompetent testimony introduced by defendants but, otherwise, we think these exhibits should have been excluded. It is doubtful if any of this testimony greatly influenced the conclusions of the Chancellor and, as stated, except to the extent noted we have not considered it. The case was tried below on depositions and is triable here de novo.

We concur in the findings and conclusions of the Chancellor and the decree below is affirmed with costs.