Lillian CORRADO, Individually and
as Executrix of the Estate of
Birdwell Connatser, et al.,

v.

Barbara HICKMAN, Individually, and
as Co–Executor of the Estate of
Ada Florence Crick, et al.

Court of Appeals of Tennessee,
at Knoxville.

Dec. 11, 2002 Session.

March 7, 2003.

Permission to Appeal Denied by
Supreme Court June 30, 2003.

George W. Morton, Jr., Knoxville, Tennessee, for the Appellant, Barbara Hickman, Individually and as Co–Executor of the Estate of Ada Florence Crick.

Christopher J. Oldham, Knoxville, Tennessee, for the Appellant, Dwight Crick, Individually, and as Co–Executor of the Estate of Ada Florence Crick.

Timothy W. Jones, Sevierville, Tennessee, for the Appellees, Lillian Corrado, Individually and as Executrix of the Estate of Birdwell Connatser, et. al.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

This case involves a property line dispute. Both sides claim ownership of the disputed lots under deeds that have been of record for more than thirty years. Plaintiffs' deed is senior to Defendants'. The deeds created an interlock. Defendants' predecessors in title built a house in approximately 1965 that encroaches into the interlock. Defendants also have maintained a small strip of land to the west of this encroachment since that time. Plaintiffs used the northernmost portions of the disputed land for various uses including cutting firewood, erecting a television antenna and a dog pen, and building tree houses. Defendants claim ownership of the entire interlock under Tenn.Code Ann. § 28–2–105 by adverse possession. The Trial Court granted Defendants ownership of the portion of land the house encroaches upon and the strip of land west of the encroachment that Defendants had maintained, but held the title to the remainder of the disputed property was Plaintiffs' by virtue of their senior record title. Defendants appeal. We affirm.

### Background

This case involves a property line dispute. As in most property line disputes, a description of the history of the disputed property is, at best, confusing. Plaintiffs claim to own, through their deed, lots 8, 9, 9A, and a portion of lots 5, 6, and 7 of the "Crum Delozier Addition" in the City of Sevierville. Defendants claim to own, by their deed, all of lot 7 and a portion of lot 6 in the same subdivision. At issue are the portions of lots 6 and 7 covered by both deeds.

Plaintiffs base their claim to ownership on a deed to their predecessor in title recorded in February of 1965. This deed excepted out a portion of lots 6 and 7,

previously deeded to Defendants' predecessor in title. The problem apparently arose as the result of a Deed of Correction recorded in September 1965, which purports to "convey" all, rather than just a part, of lots 6 and 7 to Defendants' predecessor in title. Thus, Plaintiffs claim the disputed portion of lots 6 and 7 by virtue of a deed recorded in February 1965, and Defendants claim the disputed portion of lots 6 and 7 by virtue of a deed recorded in September 1965 [1]. Plaintiffs' deed and Defendants' deed of correction, therefore, created an interlock as to part of lots 6 and 7 [hereinafter, "the Interlock"].

In approximately 1965, Defendants' predecessors in title built a house that sits mostly on Defendants' undisputed portion of lot 7. This house encroaches, however, into the lot 7 portion of the Interlock. Testimony at trial showed Plaintiffs were aware of the encroachment from the time the house was built, but did nothing about it. Over the years, Defendants maintained a strip of land approximately two mower widths to the west side of the house in the Interlock.

Testimony showed Plaintiffs used the northern sections of lots 6 and 7 in the Interlock for various uses including cutting firewood for their house, which was heated solely with a wood stove, erecting and maintaining a television antennae and a dog lot, and building tree houses. The testimony was that these uses occurred during the 1970's.

In 1982, Defendant, Barbara Hickman, conveyed a portion of lots 6 and 7 to her mother, Ada Florence Crick. This deed acknowledged that Plaintiffs owned the northernmost portions of lots 6 and 7. After the death of Ada Florence Crick some years later, Barbara Hickman and

---

1. The disputed lots 6 and 7 have a long and somewhat convoluted chain of title, which we

have attempted to simplify in order to highlight only the facts relevant to this appeal.

her brother, Dwight Crick, were named co-executors of Ada Florence Crick's estate. Defendants began to clear a portion of land beyond the two mower widths to the west of the house that had been maintained over the years, and the instant case involving the boundary line dispute arose as a result.

After this suit was filed, Defendant, Dwight Crick, sued Defendant, Barbara Hickman, to reform the deed from Barbara Hickman to Ada Florence Crick to change the description that had recognized Plaintiffs' ownership of the northern portions of lots 6 and 7. As a result of this suit, a quit claim deed was filed conveying all of lot 7 and a 50 foot width of lot 6 to Defendants.

The instant case went to trial in June of 2001. Prior to the trial beginning, the Trial Court advised counsel and the parties that he knew Plaintiffs and had attended college with them. The Trial Court asked if anyone had any objections to his presiding over the matter. Defendants stated they had no problems and waived any objections.

At trial, Defendants conceded Plaintiffs have superior record title. Plaintiffs conceded that the area where the house encroaches and a strip of approximately two mower widths to the west of the house should be decreed to Defendants. However, Defendants claimed they had color of title and had adversely possessed the disputed land and, thus, were entitled to ownership of all of lots 6 and 7 under Tenn. Code Ann. § 28–2–105.

Initially, the parties to the suit were Lillian Corrado, Individually and as Executrix of the Estate of Birdwell Connatser; Uwell Loveday; and Helen Loveday; versus Barbara Hickman, Individually and as Co–Executor of the Estate of Ada Florence Crick. Prior to trial, Helen Loveday died and Uwell Loveday was substituted as Executor of the Estate of Helen K. Loveday. During the trial, testimony indicated Dwight Crick, Co–Executor of the Estate of Ada Florence Crick, had not been made a party to the suit. When asked by the Trial Court if they would stipulate Dwight Crick was not a required party, defense counsel indicated they were not willing to stipulate to this.

The Trial Court entered an order July 27, 2001, holding Plaintiffs have superior record title to the disputed land. The order granted Defendants ownership of the portion of land where the house encroaches upon the Interlock and the strip of approximately two mower widths, by virtue of adverse possession. The order held Defendants were not entitled to ownership of the rest of the disputed portions of lot 6 or 7. Defendants filed a notice of appeal in July 2001.

On August 10, 2001, the Trial Court *sua sponte* set aside the July 27, 2001, order expressing the concern that necessary parties on both sides were not joined in the first suit. Plaintiffs amended the complaint to add plaintiffs, Amy Connatser; Joe Connatser; Thomas Ernest Connatser; and Kathy Vaughn; and defendant, Dwight Crick, Individually and as Co–Executor of the Estate of Ada Florence Crick.

During the docket sounding for the second trial, Defendants asked the Trial Court if the offer to recuse was still available. The Trial Court advised that a motion for recusal would need to be filed and the court would give no advance notice of its ruling. The Trial Court then advised counsel the case would not be set for trial if Defendants wished to file a motion for recusal. Defendants chose to file a motion for recusal and the case was not set for trial at that time. The Chancellor did not recuse himself.

On June 19, 2002, this Court entered an order holding it was without jurisdiction to hear the appeal filed in July of 2001, because no final order had been entered. That appeal was dismissed.

At the second trial, the parties stipulated to the transcript from the earlier trial and offered additional evidence. The Trial Court entered an order July 8, 2002, holding, *inter alia,* Defendants were vested with ownership of the portion of land where the house encroaches upon the Interlock and the strip of approximately two mower widths, but not the rest of the disputed portion of lots 6 and 7 as claimed by Defendants. Further, the order noted the equities favored Plaintiffs. Defendants' predecessor in title was on notice of Plaintiffs' deed when he took the Deed of Correction, and as privy to their predecessor, Defendants are estopped from making the claims asserted in this suit. The order also stated the suit between Dwight Crick and Barbara Hickman appeared to be "nothing more than an attempt to remanufacture a defense for this suit," and under the circumstances, Defendants were barred from claiming the property by the doctrines of acquiescence, unclean hands, and/or waiver. In addition, the Trial Court found the evidence indicated Plaintiffs, under their title instruments, had been assessed with, and had paid the real estate taxes on the disputed land for more than twenty years, and, therefore, Plaintiffs are presumed to be the owners of the property. The Trial Court found this presumption was not rebutted.

Defendants again appealed to this Court.

### *Discussion*

Although not stated exactly as such, Defendants raise three issues on appeal: 1) did the Trial Court correctly apply Tenn. Code Ann. § 28–2–105 and case law re-

garding disputes about an interlock; 2) did the Trial Court err in relying upon the payment of taxes; 3) did the Trial Court err in denying the request for recusal. We will address each issue in turn.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R.App. P. 13(d); *Bogan v. Bogan,* 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.,* 58 S.W.3d 706, 710 (Tenn.2001).

■ We begin by considering whether the Trial Court correctly applied Tenn. Code Ann. § 28–2–105 and case law regarding disputes about an interlock. Tenn.Code Ann. § 28–2–105 provides:

Any person holding any real estate or land of any kind or any legal or equitable interest therein, and such person and those through whom such person claims having been in adverse possession of same for seven (7) years, where the real estate is held and claimed by such person or those through whom such person claims by a conveyance, devise, grant, a decree of a court of record, or other assurance of title purporting to convey an estate in fee, and such conveyance, devise, grant, or other assurance of title, has been recorded in the register's office of the county in which the land lies for a period of thirty (30) years or more or such decree entered on the minutes of such court for a period of thirty (30) years or more, is vested with an absolute and indefeasible title to such real estate or interest therein.

Tenn.Code Ann. § 28–2–105 (2002).

In its Memorandum and Order entered July 8, 2002, the Trial Court noted Plain-

tiffs conceded Defendants should be granted the portion of the Interlock where the house encroaches and approximately two lawn mower widths to the west, which Defendants had maintained. Thus, Plaintiffs do not contest that the encroachment of Defendants' house on the Interlock, in place since approximately 1965, constitutes adverse possession of that portion of lot 7. Nor do they contest that Defendants' deed has been of record for more than thirty years. Rather, the conflict arises because Defendants claim that under Tenn.Code Ann. § 28-2-105, they are entitled to the entire Interlock, not just the portion they physically adversely possessed.

Defendants rely upon *State v. Seals*, which states "if the junior claimant is in actual possession of a part of the interlock he will acquire constructive possession of the whole of it, although the senior claimant is in possession of some land lying within the conveyance to him but not within the interlock." *State v. Seals*, 26 Tenn. App. 333, 171 S.W.2d 836, 840 (1943) (quoting *Allis v. Hunt*, 155 Tenn. 155, 294 S.W. 509, 511 (1927)). This is the general rule in Tennessee. *E.g., Lieberman, Loveman & O'Brien v. Clark*, 114 Tenn. 117, 85 S.W. 258, 262 (1904); *Coal Creek Mining Co. v. Heck*, 83 Tenn. 497, 516 (1885); *Covington v. Erwin*, 84-352-II, 1985 Tenn.App. LEXIS 3140, at *19 (Tenn.Ct.App. Aug. 29, 1985), *no appl. perm. appeal filed.*

It is important to note, however, that the general rule applies to cases where the senior claimant fails to possess any portion of the interlock. This is distinguishable from the instant case where both parties used the Interlock.

Our Supreme Court has held "in the case of the interlap of grants, rival possessions within the interlap will neutralize each other, and the case must be determined upon the strength of title." *Lieberman, Loveman & O'Brien*, 85 S.W. at 260

(construing the predecessor to Tenn.Code Ann. § 28-2-105). "If the possession be mixed or concurrent, the legal seizin is in him who has the title." *Harrison v. Beaty*, 24 Tenn.App. 13, 137 S.W.2d 946, 949 (1939).

In its Memorandum and Order entered July 8, 2002, the Trial Court found both parties had made use of the disputed property. Defendants' house encroaches into the Interlock and testimony indicated Defendants' predecessor had maintained approximately two lawn mower widths west of the encroachment. Additionally, the Trial Court stated the evidence showed "Plaintiffs made substantial use of the property [in the Interlock] to the North." The Trial Court found Plaintiffs had testified credibly to cutting firewood on the Interlock to use in their home, which was heated solely with a wood stove. The Trial Court also noted the evidence showed Plaintiffs had made use of the Interlock for such things as erecting and maintaining a television antennae and a dog lot, and building tree houses. The evidence does not preponderate against the Trial Court's finding of "substantial use of the property ..." by Plaintiffs. As the possession of the Interlock was mixed or concurrent between Plaintiffs and Defendants, the legal seizin rests with Plaintiffs by virtue of their legal superior title.

■ Defendants argue Plaintiffs are not entitled to any portion of the Interlock because Plaintiffs did not adversely possess the property. Defendants are mistaken regarding the level of possession required of one who holds superior title as do Plaintiffs. Adverse possession is required to perfect the junior title and not the legal superior title. *See Lieberman, Loveman & O'Brien*, 85 S.W. at 260; *Harrison*, 137 S.W.2d at 949.

The evidence does not preponderate against the Trial Court's finding of mixed use. Because there was a mixed or concurrent use of the Interlock, Defendants as junior titleholders are not entitled to ownership of the entire Interlock, but only to the portion they actually adversely possessed. The Trial Court, with Plaintiffs' consent, granted Defendants the portion of land where the house encroaches upon the Interlock and a strip of approximately two mower widths, based upon adverse possession. In addition, the Trial Court correctly applied Tenn.Code Ann. § 28–2–105 and the cases regarding disputes about an interlock in determining Defendants were not entitled to ownership of the entire Interlock. Therefore, we affirm on this issue.

■ We next address whether the Trial Court erred in relying upon the payment of taxes. In its Memorandum and Order entered July 8, 2002, the Trial Court found that Plaintiffs "under their title instruments, [have] been assessed with, and have paid the real estate taxes on the disputed land for more than 20 years."

Defendants' brief argues the Trial Court misapplied Tenn.Code Ann. § 28–2–110. However, the Trial Court never applied § 28–2–110. Rather, as Plaintiffs' brief notes, the Trial Court applied Tenn.Code Ann. § 28–2–109.

Under Tenn.Code Ann. § 28–2–109:

Any person holding any real estate or land of any kind, or any legal or equitable interest therein, who has paid, or who and those through whom such person claims have paid, the state and county taxes on the same for more then [sic] twenty (20) years continuously prior to the date when any question arises in any of the courts of this state concerning the same, and who has had or who and those through whom such person claims have had, such person's deed, conveyance, grant or other assurance of title recorded in the register's office of the county in which the land lies, for such period of more than twenty (20) years, shall be presumed prima facie to be the legal owner of such land.

Tenn.Code Ann. § 28–2–109 (2002). Thus, if a party has paid taxes continuously for more than twenty years and has assurance of title that has been of record for more than twenty years, a rebuttable presumption of ownership arises under Tenn.Code Ann. § 28–2–109.

The Trial Court found Plaintiffs had paid the real estate taxes for more than twenty years. This fact coupled with the fact that Plaintiffs' deed had been of record for more than twenty years created a rebuttable presumption that Plaintiffs were the owners of the disputed property. The Trial Court found that this presumption was not rebutted. The evidence does not preponderate against these findings. Therefore, the Trial Court did not err in relying upon the payment of taxes as prima facie evidence of Plaintiffs' ownership of the disputed land. We affirm on this issue.

■ Finally, we address whether the Trial Court erred in denying the request for recusal. At the beginning of the first trial of this matter, the Trial Court told counsel and the parties that he knew Plaintiffs and had attended college with them. The Trial Court asked if any party had a problem with his presiding over the case. Counsel for Defendants stated they had no problem. The issue of recusal was waived.

Defendants' brief argues the issue of recusal arose again after the Trial Court *sua sponte* set aside its ruling from the first trial. During the docket sounding for the second trial, Defendants asked the Trial Court if the offer to recuse was still

available. The Trial Court advised that a motion for recusal would need to be filed and the court would give no advance notice of its ruling. The Trial Court then advised counsel the case would not be set for trial if Defendants wished to file a motion for recusal. Defendants chose to file a motion for recusal and the case was not set for trial at that time. The Chancellor did not recuse himself.

Defendants' brief argues that the setting of the case for trial was "[held] hostage to a formal motion of recusal," and as such, indicates bias on the part of the Trial Court. Defendants' brief also argues the Trial Court set aside its earlier order "to afford the plaintiff an opportunity to correct a fatal deficiency in their case." In addition, Defendants apparently argue the fact that the Trial Court chose to disbelieve Defendants' testimony somehow indicates bias.

As this Court has explained:

The decision of whether recusal is warranted must in the first instance be made by the judge himself or herself. Unless the grounds for recusal fall within those enumerated in Tenn. Const. art. 6, § 11 or Tenn.Code Ann. § 17–2–101(1994), these decisions are discretionary. . . .

A party may lose the right to challenge a judge's impartiality by engaging in strategic conduct. Courts frown upon the manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order "to experiment with the court . . . and raise the objection later when the result of the trial is unfavorable." Thus, recusal motions must be filed promptly after the facts forming the basis for the motion become known, and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality.

*Kinard v. Kinard,* 986 S.W.2d 220, 228 (Tenn.Ct.App.1998), *reh'g granted on other grounds,* (citations omitted).

Defendants waived recusal when the Chancellor advised the parties at the beginning of the first trial that he knew Plaintiffs and had attended college with them. At that time, Defendants did not question the Chancellor's impartiality. Defendants waived the issue of recusal when they were told this information by the Chancellor, and Defendants alleged no new facts sufficient to raise a question about the Chancellor's impartiality. We fail to see how holding the setting of trial until pending motions have been disposed of constitutes "[h]olding the setting of a case for trial as hostage."

In addition, we find Defendants' argument that the Trial Court set aside its order to allow the Plaintiffs "an opportunity to correct a fatal deficiency in their case" lacks merit. In its order entered August 10, 2001, the Trial Court set aside its order from the first trial because necessary parties were not before the court. The Court stated it wanted to insure that the order pertaining to this case be in final appealable form "to prevent unnecessary expense to the parties in connection with a futile appeal." The necessary parties were added subsequently and the case again tried. We further note the Trial Court's order entered July 27, 2001, and the Trial Court's order entered July 8, 2002, reach the same result. In both orders Defendants are granted only the portion of land where the house encroaches and a strip to the west of approximately two mower widths. In both orders, title to the remainder of the disputed land was found to be vested in Plaintiffs.

Defendants are attempting to manipulate the recusal issue because the result at

trial was unfavorable. Defendants waived the recusal issue prior to the first trial, and the record is devoid of any evidence indicating that new facts justifying recusal arose. We find no grounds to question the Trial Court's impartiality at the second trial. We hold the Trial Court properly exercised its discretion in denying the motion for recusal, and we affirm on this issue.

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellants, Barbara Hickman, Individually and as Co–Executor of the Estate of Ada Florence Crick, and Dwight Crick, Individually and as Co–Executor of the Estate of Ada Florence Crick, and their sureties.